USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/31/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYMOND JACKSON,

      Plaintiff

v.

DOWNSTATE CORRECTIONAL FACILITY,
S. REYES (C.O.), and C.O. THOBAN,

      Defendants.

16-CV-0267 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

  Plaintiff Raymond Jackson ("Plaintiff") commenced this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants C.O. Reyes ("Reyes"), C.O. Thoban ("Thoban") (collectively, the "Defendants"), and Downstate Correctional Facility ("Downstate")[1] for alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment. (*See* The Second Amended Complaint ("SAC") (ECF No. 22).). Presently before the Court is Defendants' motion for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA") ("Defendants' Motion"). (*See* Defendants' Brief in Support of their Motion for Summary Judgment ("Defs. Br.") (ECF No. 38) at 1-2.) For the following reasons, Defendants' Motion is DENIED.

## FACTUAL BACKGROUND[2]

  Plaintiff is an inmate incarcerated at Clinton Correctional Facility ("Clinton"), a prison operating under the auspices of the New York State Department of Corrections and Community

---

[1] By order dated February 2, 2016, this Court dismissed all claims against Downstate and terminated it from the action, as it is not a proper party. (*See* ECF No. 8.)

[2] The Court draws the recitation of facts from a review of the record available, including the SAC and the affidavits and evidence annexed to the parties' motion-related papers. Defendants argue that, in light of Plaintiff's failure to adequately respond to their Rule 56.1 Statement of Uncontested Material Facts, this Court should deem the facts admitted as stated. (*See* Reply in Further Support of Defendants' Motion ("Defs. Reply") (ECF No. 42) at 2.). Though

Supervision ("DOCCS"). (See SAC at 2.) Plaintiff's claims arise from an incident that occurred on October 8, 2015 while he was housed at Downstate. (Id. at 4.) Specifically, Plaintiff alleges that while he was in the "draft" room, he was attacked by Defendants. (See id.) The following day, Plaintiff was transferred to Clinton. (See Declaration of Bruce J. Turkle in Support of Defendants' Motion ("Turkle Decl.") (ECF No. 39), Ex. 1 at 8.)

Upon his arrival at Clinton, Plaintiff attended "Phase 1"; an orientation program at Clinton covering all aspects of incarceration, including a review of the grievance process and the remedies available to inmates under 7 N.Y.C.R.R. § 701 et seq. (See Turkle Decl., Ex. 1 at 12-13.)

On October 21, 2015, Plaintiff completed an inmate grievance and sent it to Downstate complaining of the alleged assault that took place on October 8, 2015 when he was still housed there (the "Downstate Grievance"). (See Turkle Decl., Ex. 1 at 46-47; Ex. 4.) A letter dated October 27, 2015 was sent to Plaintiff from K. Watson, Inmate Grievance Program ("IGP") Supervisor at Downstate advising that she had received the October 21, 2015 grievance, but in light of Plaintiff's transfer to Clinton, he was required to file his grievance "at the facility where [he was] housed even if it pertains to another facility." (Turkle Decl., Ex. 5.) The letter also noted that the original grievance was being returned to Plaintiff to "proceed as [he saw] fit." (Id.)

On October 26, 2015, Plaintiff filed a grievance at Clinton (the "October Grievance"). (See Turkle Decl., Ex. 1 at 66-67; Ex. 6.) This grievance was not written on the standard grievance form, but a regular piece of paper. (See Turkle Decl., Ex. 1 at 67-69; Ex. 6.) Plaintiff testified that

---

Plaintiff has failed to provide a Rule 56.1 response that explicitly addresses each of Defendants' purportedly uncontested facts, Plaintiff has nevertheless provided this Court with a document that purports to be in compliance with Rule 56.1, though read in context falls short of a Rule 56.1 Statement. Regardless, this Court has discretion to, and will, conduct a search of the record to ascertain whether the facts as alleged by the moving party are in fact supported by the record. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (noting that "while a court is 'not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement.")

as soon as he received Ms. Watson's letter, he used a piece of carbon paper to create the October Grievance and filed it the same day. (*See* Turkle Decl., Ex. 1 at 66-69.)[3] Plaintiff contends that his October Grievance was ignored and not acknowledged. (*Id.* at 69, 90-91, 95, 102, 103.) Plaintiff repeatedly maintains that it was filed. (*Id.*; *See* Plaintiff's Brief in Opposition to Defendants' Motion ("Plf. Br.") (ECF No. 44) at 2.)[4]

Plaintiff twice completed "requests for interview information" addressed to A. Sweeney, Assistant Superintendent at Clinton ("Sweeney"). (*See* Turkle Decl., Ex. 7.) The first was on October 20, 2015, the day before he drafted his Downstate Grievance, and merely requested to speak with Sweeney. (*Id.*) The second was on October 26, 2015, and stated that he was "told [he] can still pursue a Grievance against Downstate Correctional Facility from Clinton Annex? [sic] If so ma'm that is what I am asking permission to do." (*Id.*) Sweeney sent Plaintiff a letter on October 29, 2015, acknowledging that he requested to speak with her and sought permission to pursue a grievance against Downstate correctional officers. (*See* Turkle Decl., Ex. 8.) Sweeney informed Plaintiff of the following: (1) as to his October 20, 2015 request, that he needed to provide a reason for meeting with her; and (2) with respect to the October 26, 2015 request, "if [he

---

[3] The parties appear to dispute the date on which the October Grievance was drafted. During his deposition, Plaintiff testified that the first time he learned that he had to file his grievance at Clinton, as opposed to Downstate, was when he received the Watson letter dated October 27, 2015. (*See* Turkle Decl., Ex. 1 at 66.) The October Grievance, which he purportedly drafted *only after* receiving the Watson letter, however, was dated October 26, 2015. (*Id.*) Defendants suggest that Plaintiff manufactured his grievance. (*See* Defs. Br. at 23 n.7.) Such an argument is wholly speculative, and thus rejected by this Court, as Defendants fail to demonstrate any other evidence that would support such a contention. Nevertheless, the inconsistency in Plaintiff's testimony is not material; Plaintiff insists that he filed this grievance, (*see* Turkle Decl., Ex. 1 at 69, 90-91, 95, 102, 103), that he did so as soon as he received Watson's letter, (*id.* at 66), and that it is possible he got the dates wrong, or wrote the wrong date on the grievance, (*id.* at 66-67.) Ultimately, the date the grievance was filed, whether October 26, 2015 or October 27, 2015, is immaterial for purposes of this motion, as both dates are well within the 21 day time frame for filing a grievance under 7 N.Y.C.R.R. § 701.5(a)(1).

[4] By memorandum endorsement dated May 2, 2017, this Court granted Defendants' leave to file this motion for summary judgment. (ECF No. 30.) In addition to setting a briefing schedule, this Court directed Defendants to file all motion-related papers, *including Plaintiff's opposition*, on the Court's electronic filing system on the reply date, July 6, 2017. (*Id.*) Thereafter, the Court extended the motion deadline to August 7, 2017. (ECF No. 33.) While Defendants did file their motion-related papers on the reply date, they failed to file a copy of Plaintiff's Opposition. For the record, Plaintiff's Opposition will be filed on ECF prior to the filing of this Opinion, and the Court notes that it was timely served, as Defendants address Plaintiff's arguments in opposition in their Reply.

had] any concerns [he felt were] in need of a grievance", that he could "pursue this through [the] formal grievance process." (*Id.*) Sweeney also directed Plaintiff to address any of his concerns regarding the grievance process to Mrs. Brousseau, Clinton's IGP Supervisor. (*Id.*)

Plaintiff made no further contact with any prison administrators or IGP members to ascertain the status of his October Grievance before initiating this lawsuit in January 2016. (*See* Turkle Decl., Ex. 1 at 90-91.) Nevertheless, during the months of November and December of 2015, Plaintiff testified that other inmates were telling him that something was wrong with his grievance and that he should have already received a response or hearing by that point. (*Id.* at 90.) Plaintiff did not, however, reach out to Sweeney again, or contact Mrs. Brousseau as Sweeney had suggested. Instead, on January 7, 2016, Plaintiff initiated this Section 1983 lawsuit, (*see* ECF No. 1), because his October Grievance was not acknowledged and he thought "they were playing games", (*see* Turkle Decl., Ex. 1 at 103.)

By letter dated February 1, 2016, Plaintiff finally reached out to Mrs. Brousseau, to ask why there was no response to his October Grievance. (*See* Turkle Decl., Ex. 9.) In response on February 4, 2016, Mrs. Brousseau advised Plaintiff that "[t]here is no record of a grievance on file for you at Clinton annex that concerns allegations of assault." (*See* Turkle Decl., Ex. 10.) Plaintiff also received a memorandum dated March 7, 2016 from Downstate in response to his request for records, which informed him that they did not have any grievance on file pertaining to an assault that took place on October 8, 2015. (*Id.* Ex. 11.)

During this time, Plaintiff spoke with two Inmate Grievance Resolution Committee ("IGRC") representatives, Cedrick and Beatha, who informed him that the evidence showed "that [he] filed the" October Grievance, (*see* Turkle Decl., Ex. 1 at 102), the Clinton IGP administrators "probably just didn't acknowledge it and they threw it out", (*id.*), and he should file a new

4

grievance, (*id.* at 116-18.) Thereafter, on March 15, 2016, Plaintiff requested leave from this Court to withdraw his Complaint, as he did "not use the proper vehicle in this matter," but otherwise failed to explain the impetus for this request. (*See* ECF No. 9.) On April 15, 2016, this Court granted Plaintiff's application and dismissed his case without prejudice. (*See* ECF No. 14.) In the interim, Plaintiff filed a grievance on April 3, 2016 (the "April Grievance"). (*See* Turkle Decl., Ex. 12.)

The April Grievance stated that Plaintiff had previously filed a grievance in October, but "got no response", he felt "this is in retaliation against [him] for filing a grievance against another officer" at Downstate, and that C.O. Reyes and C.O. Thoban "assaulted [him and] they hurt [his] elbow . . . ." (*Id.*) Plaintiff's April Grievance was dismissed as untimely on April 19, 2016. (*See* Turkle Decl., Exs. 13-15.) The decision indicated that there was no grievance on record regarding an alleged assault at Downstate and that Plaintiff's April Grievance was filed beyond the timeframes articulated in 7 N.Y.C.R.R. § 701; thus it could not be accepted or investigated. (*See id.*) Plaintiff appealed to the Clinton Superintendent, who affirmed the IGRC's decision on April 26, 2016, and reiterated that the April Grievance was untimely and "unsubstantiated." (*See* Turkle Decl., Ex. 16.) On April 29, 2016, Plaintiff appealed the Superintendent's decision to the Central Office Review Committee ("CORC"), (*see* Turkle Decl., Ex. 17), and after a hearing on August 31, 2016, the CORC affirmed the Superintendent's decision, (*see* Turkle Decl., Ex. 18.)

Approximately three months later, on November 16, 2016, Plaintiff made an application before this Court for leave to reinstate his action, based on the CORC's denial of his April Grievance. (*See* ECF No. 15.) Defendants opposed Plaintiff's application, arguing that if Plaintiff's reasoning for discontinuing the action was originally related to his need to exhaust his administrative remedies, his only recourse was to now initiate a new lawsuit, not reopen the action.

5

(*See* ECF No. 16.) By short order dated January 26, 2017, this Court granted Plaintiff's application to reopen the case and directed Plaintiff to file an amended complaint on or before March 13, 2017. (*See* ECF No. 19.) Thereafter, on February 16, 2017, Plaintiff filed an amended complaint and amended his pleadings a second time on March 13, 2017. (*See* ECF Nos. 20, 22.) Plaintiff's March 13, 2017 second amended complaint is the operative complaint.

In support of their motion, Defendants also provide the Court with affidavits from Michael Kirkpatrick, Superintendent at Clinton, Brousseau, and Karen Bellamy, Director of the Inmate Grievance Program at DOCCS, all demonstrating that no grievance dated October 26, 2015 or related to an October 8, 2015 assault at Downstate (aside from the April Grievance) was ever filed with the IGRC. (*See* Turkle Decl., Ex. 19 ¶¶2-4; Ex. 20 ¶¶15-16; Ex. 21 ¶¶7-9.)

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden,

the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

## DISCUSSION

### I. PLRA Exhaustion

Defendants argue that they are entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies. (*See* Defs. Br. at 1-2.) Though Defendants are correct that Plaintiff has failed to exhaust his administrative remedies, such failure is excusable.

The PLRA mandates pre-litigation exhaustion of all complaints about inmate life by stating that "a prisoner confined in any jail, prison, or other correctional facility" must exhaust "such administrative remedies as are available" prior to initiating a federal lawsuit. 42 U.S.C. § 1997e(a). To ascertain what remedies are available, courts must look to "the state prison procedures [available] and the prisoner's grievance" choices. *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (citing *Jones v. Bock*, 649 U.S. 199, 218 (2007)). Thereafter, courts consider whether a particular plaintiff has exhausted his administrative remedies, and in circumstances where he has not, courts must then determine whether such a failure may be excused. *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122-24 (2d Cir. 2016).

In New York, the grievance process is governed by the three tiered IGP system. *Id.* at 125; *see also* 7 N.Y.C.R.R. § 701. Typically, an inmate must (1) "file[] a grievance with the [IGRC within 21 days of the incident]"; (2) "appeal an adverse decision by the IGRC to the Superintendent of the facility"; and (3) "appeal an adverse decision by the Superintendent to the [CORC]." *See Espinal*, 558 F.3d at 125; *see also* 7 N.Y.C.R.R. §701.5.

In situations such as this, concerning a grievance of harassment,[5] there is an expedited procedure which mandates that the grievance be sent directly to the Superintendent on the day it

---

[5] Harassment grievances are defined as "those grievances that allege employee misconduct meant to annoy, intimidate, or harm an inmate," *see* N.Y.C.R.R. § 701.2(e), and have consistently been held to include grievances concerning excessive force, *see Williams*, 829 F.3d at 119-20 (discussing harassment grievance procedure section as relevant to

8

is filed. *See* N.Y.C.R.R. § 701.8. The Superintendent then has 25 days to "render a decision on the grievance and transmit said decision" to the inmate. *Id.* § 701.8(f). "If the Superintendent fails to respond within the required 25 calendar time limit the grievant may appeal his or her grievance to CORC." *Id.* § 701.8(g). To do so, the grievant must "fil[e] a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk." *Id.*

The regulations also provide that within 45 days of the incident, an inmate can seek an extension of the time to file a grievance beyond the 21 days prescribed by §701.5 or file an appeal "of an IGRC or superintendent's decision", based on "mitigating circumstances." *See* 7 N.Y.C.R.R. §701.6(g)(1)(i)(a), (b). No exceptions, however, are granted "if the request was made more than 45 days after" the incident. *Id.*[6]

Prior to 2016, if a *pro se* inmate had failed to exhaust his administrative remedies, the Second Circuit urged courts to consider whether special circumstances existed "that justified a plaintiff's failure to exhaust remedies that were available and not subject to estoppel." *Williams*, 829 F.3d at 122 (discussing *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004)). In 2016, however, the Supreme Court held that the exhaustion analysis hinges on the functional availability of administrative remedies, and that non-textual exceptions to the exhaustion requirement would not stand. *See Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016). Thus, though a remedy is technically on the books, it is considered functionally unavailable if (1) "it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or

---

plaintiff's claims of excessive force); *see also Shaw v. Ortiz*, No. 15-CV-8964(KMK), 2016 WL 7410722, at *3 (S.D.N.Y. Dec. 21, 2016) (discussing expedited procedure).

[6] The Court acknowledges that § 701.6(g)(1)(i)(b) provides that an extension of the time to appeal from the IGRC or a Superintendent's decision may be granted when filed outside the 45-day window, *only if* the "appeal asserts a failure to implement the decision." *See* 7 N.Y.C.R.R. § 701.6(g)(1)(i)(b). Such an exception necessarily contemplates a situation where directives outlined in the IGRC or Superintendent's decision are not implemented and is thus predicated on the existence of a properly filed grievance.

(3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. Consequently, *Ross* explicitly rejected the special circumstances exception. *Id.* at 1858.[7]

### A. The October Grievance

After learning that his Downstate Grievance was rejected for failure to comply with 7 N.Y.C.R.R. § 701.5(a)(1), Plaintiff filed the October Grievance. (*See* Turkle Decl., Ex. 1 at 66-68.) Such grievance is governed by 7 N.Y.C.R.R. § 701.8, as it is a harassment grievance. Plaintiff's grievance thus would have been sent directly to the Superintendent for immediate review. *See* 7 N.Y.C.R.R. § 701.8(b). Thereafter, the Superintendent had 25 days within which to "render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the grievance clerk, and any direct party of interest." *Id.* § 701.8(f). After expiration of the 25 calendar day period, when "the Superintendent fail[ed] to respond", the procedures provide that Plaintiff could have "appeal[ed] his grievance to CORC," by completing a Notice of Decision to Appeal. *Id.* § 701.8(g). Instead, he claims that he "tried to exhaust the grievance process by trying to have a personal conversation with Sweeney about the assault that happen [sic] at downstate, and at Clinton Annex, but she did not give me an interview." (Plf. Br. at 2.) Such conduct is insufficient for exhaustion, *see Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (noting that after *Woodford v. Ngo*, 548 U.S. 81 (2006), "notice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance . . . .'"); *see also Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (summary order) ("Merely alerting the prison officials as to the nature of the wrong . . . does not

---

[7] To the extent Plaintiff relies on *Hemphill*, to argue that certain special circumstances should excuse his failure to exhaust his administrative remedies, in light of the Supreme Court's outright rejection of such an exception to the PLRA in *Ross*, such an argument cannot stand.

constitute proper exhaustion.") (internal quotations and alterations omitted), and Plaintiff's failure to appeal to the CORC constitutes a failure to exhaust his administrative remedies, *see Cicio v. Wenderlich*, 714 F. App'x 96, 97-98 (2d Cir. 2018) (summary order) (finding that failure to take an appeal provided for in the regulations "[w]hen a prisoner has filed a grievance, but receives no response" constitutes failure to exhaust); *see also Shaw v. Ortiz*, No. 15-CV-8964(KMK), 2016 WL 7410722, at *3 (S.D.N.Y. Dec. 21, 2016) (appeal required "even if [plaintiff] do[es] not receive a response from the IGRC or Superintendent").

The critical question, then, is whether the appeal was functionally unavailable to Plaintiff such that his failure to exhaust should be excused. Toward that end, Plaintiff argues that "administrative remedies were unavailable due to threats and being rough [sic] up by the guards at Clinton Annex, [that he] truly fear[ed] for [his] safety and well being," (Plf. Br. at 3); as such, he "filed directly to the federal court", (*id.*) Such allegations appear to suggest the applicability of the third exception articulated in *Ross*. Moreover, in light of Defendants' argument that the October Grievance was not filed, this Court will also analyze whether the administrative remedies were so opaque as to render them incapable of use.

### 1. *Threats and Intimidation*

Plaintiff's argument that administrative remedies were unavailable to him because he was threatened and intimidated by prison officials fails to meet the third unavailability exception articulated in *Ross*. "[R]eliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002); *see also Medina v. Kaplan*, No. 16-CV-7223(KMK), 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018) (noting that conclusory allegations insufficient "to establish the unavailability of administrative remedies"). "Accusations which are 'unsupported' and 'stand alone' are similarly insufficient."

11

*Medina*, 2018 WL 797330, at *5; *see also Khudan v. Lee*, No. 12-CV-8147(RJS), 2016 WL 4735364, at *6 (S.D.N.Y. Sept. 8, 2016) (finding insufficient allegations regarding intimidation that "fail[] to specify the dates of any threats, . . . [or] the locations" in which the threats took place). Plaintiff's argument that intimidation was the reason why he "didn't write another grievance or a letter to Ms. Brousseau . . . ," (Plf. Br. at 3-4), is wholly unsupported by any evidence and is conclusory insofar as Plaintiff points to no facts regarding such intimidation to defeat summary judgment.[8]

Moreover, Plaintiff's intimidation argument was raised for the first time in his opposition and is contradicted by his deposition testimony, in which he stated that he filed his federal court action in January of 2016 because his October Grievance had gone unanswered and he thought "they were playing games." (*See* Turkle Decl., Ex. 1 at 103; *see also id.* at 102 (testifying that they "didn't want to acknowledge [his] letters so [he] filed a 1983".) Consequently, though the Court acknowledges its role is not to make credibility determinations, it will discredit the intimidation argument as "insufficient to create a *genuine* dispute of fact." *Khudan*, 2016 WL 4735364, at *5; *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment

---

[8] To the extent that Plaintiff's intimidation argument pertains to his being "roughed up by the guards", when he "first got to the facility", (*see* Turkle Decl., Ex. 1 at 44-45), such contentions are insufficient. That conduct, if believed, clearly did not make administrative remedies unavailable to Plaintiff, as he sent his Downstate Grievance on October 21, 2015 and filed his October Grievance with Clinton on October 26, 2015, approximately two weeks after he arrived at the facility and was allegedly "roughed up". *See Aikens v. Jones*, No. 12-CV-1023(PGG), 2015 WL 1262158, at *6 (S.D.N.Y. Mar. 19, 2015) ("Where an inmate files a grievance or appeals a grievance determination after having received threats or suffered retaliation, the inmate's conduct 'directly cuts against' . . . [an] argument that . . . administrative remedies were unavailable") (alterations in original).

and that affidavit contradicts her own prior deposition testimony."); *see also LionKingzulu v. Jayne*, 714 F. App'x 80, 82 (2d Cir. 2018) (summary order).[9]

## 2. *Opaque Procedures*

The Second Circuit directly addressed the issue of opaque procedures in *Williams*;[10] a case that concerned a *pro se* inmate who gave a grievance to a corrections officer to file while he was housed in the Special Housing Unit (the "SHU"). *Williams*, 829 F.3d at 120. Thereafter, plaintiff learned (and subsequently alleged) that his grievance was never actually filed, was told that the Superintendent would look into it for him, and was transferred to another facility in the following days, ultimately never receiving a response to his grievance. *Id.* at 120-21. The Court held that, despite the fact that an appeal was technically available to plaintiff insofar as it was "officially on the books", it was nevertheless functionally unavailable because "the regulatory scheme providing for that appeal [was] 'so opaque' and 'so confusing that . . . no reasonable prisoner c[ould] use [it].'" *Id.* at 124 (quoting *Ross*, 136 S.Ct. at 1859) (alterations in original). The procedures were held "prohibitively opaque" because they "simply do not contemplate the situation in which Williams found himself", *id.* at 124, as they only provide remedies for filed grievances, *id.* Consequently, the Court identified a deficiency in the regulations that rendered administrative remedies functionally unavailable to inmates in Williams' position.

Astonishingly, Defendants fail to even mention *Williams* in their moving papers despite the obvious factual similarities presented by this case and their argument that the October

---

[9] Plaintiff's situation does not meet the first exception articulated in *Ross* either—that the administrative remedies acted as a mere dead end. First, where, as here, an "initial grievance received no response, this alone is insufficient to show that the [IGP] acted as a mere dead end." *Mena*, 2016 WL 3948100, at *4. A plaintiff is also required to "introduce[ ] facts to indicate that prison officials . . . are 'consistently unwilling to provide any relief to aggrieved inmates.'" *Id.*; *see also Crawford v. Baltazar*, No. 15-CV-9427(VB), 2018 WL 2041711, at *7 (S.D.N.Y. Apr. 30, 2018). Plaintiff failed to argue that this exception even applies to his case, and therefore fails to raise any facts in support thereof. Nevertheless, the facts belie any such contention, as they only demonstrate that each time Plaintiff sought help, prison officials provided him guidance. (*See* Turkle Decl., Exs. 5,7-9.)

[10] Neither party addresses *Williams*, despite Defendants' argument that Plaintiff's October Grievance was never filed.

13

Grievance was never filed. Such a failure is disconcerting. While *Williams* is unquestionably unfavorable to Defendants' positon, it is nevertheless Second Circuit precedent by which this Court is bound, and which Defendants had an obligation to address. The Court is particularly troubled by such behavior where, as here, the opposing party is a *pro se* litigant who has neither the legal acumen nor means to stay abreast of developments in the law.

At its core, this case is indistinguishable from *Williams*. While Plaintiff was not in the SHU or transferred after he filed his grievance, like Williams, he submitted a grievance, but that grievance was never filed. *Williams* explicitly addressed such a situation by expressly holding that, though "an administrative remedy[—the appeal to CORC—]was officially on the books"; since the grievance was never filed, "the regulatory scheme providing for th[e] appeal [was] 'so opaque' and 'so confusing that . . . no reasonable prisoner [could] use [it]." *Williams*, 829 F.3d at 124 (quoting *Ross*, 136 S.Ct. at 1859) (alterations in original); *see also id.* (where a grievance is not filed "the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies"); *Jenkins v. Cordero*, No. 17-CV-1592(VB), 2018 WL 456311, at *3 (S.D.N.Y. Jan. 17, 2018) (noting that "the IGP's regulations are not clear regarding how a prisoner is to proceed when a grievance is submitted by the inmate but never filed with the IGRC"). Despite Plaintiff's insistence that he filed his grievance and it went unanswered, the DOCCS records demonstrate that no such grievance was ever filed. (*See* Turkle Decl., Ex. 19 ¶¶2-4; Ex. 20 ¶¶15-16; Ex. 21 ¶¶7-9.) Instead, in February of 2016, almost three months after the expiration of the 45 day period, Plaintiff learned that his October Grievance was not on file. (*See id.* Exs. 9-10.) Consequently, the appeal was functionally unavailable to him.

Nevertheless, Defendants insist that Plaintiff should have appealed the nonresponse of his October Grievance to CORC. (*See* Defs. Br. at 20.)[11] Such a contention was considered and rejected by the Second Circuit in *Williams*. There, the defendants maintained that three options existed "to an inmate following his appeal of an unfiled grievance: (1) if it is still within 21 days of the incident, the inmate can re-file the complaint; (2) if it is beyond 21 days but within 45 days of the incident, the inmate can request an exception to the 21-day time limit if he can show mitigating circumstances; or (3) if it is more than 45 days since the incident, the inmate may file a separate complaint grieving the denial of an extension of the time limit." *Williams*, 829 F.3d at 125. The Second Circuit rejected each of these options, *id.* at 125-26, and noted that "the regulations plainly do not describe a mechanism for appealing a grievance that was never filed." *Id.* at 126.

Even assuming Plaintiff submitted his grievance on October 26, 2015 related to an October 8, 2015 assault, at the expiration of the 25 day window provided by § 701.8(g), Plaintiff would have had only two days to appeal to CORC, learn that his grievance was never filed, and ask for an extension of time to file a grievance. Plaintiff thus falls into that small group of inmates that "took less than the allowed 21 days to submit [their] original complaint," *see Williams*, 829 F.3d at 125; the second option articulated by defendants in *Williams*. This was rejected as an option that, "to the extent . . . available to an inmate in William's position, only increase[s] confusion regarding the avenues available to pursue an appeal." *Id.* at 126.

Additionally, Defendants' argument that Plaintiff never actually filed his grievance is of no moment. (*See* Defs. Br. at 21 (arguing that "the evidence establishes that the October 26, 2015

---

[11] Defendants specifically argue that Plaintiff could have "sought the next level of review, in this case, to the Clinton Superintendent." (*See* Defs. Br. at 20.) Defendants apparently fail to acknowledge that Plaintiff's October Grievance was a harassment grievance, governed by the expedited procedures outlined in § 701.8. Thus, the pertinent appeal would be to the CORC.

15

Grievance was never filed".) The record demonstrates that Plaintiff made attempts to file a grievance in October of 2015, though there is no record of such a grievance with the IGRC. (*See* Turkle Decl., Ex. 1 at 66-67 ("once I seen this letter I filed it"), 69 ("I put it in the inmate grievance box and it just never got answered"), 102-103 ("I see that my twenty days been lapsed. They never answered it."); Plf. Br. at 2; Exs. 4-7; Ex. 19 ¶¶2-4; Ex. 20 ¶¶15-16; Ex. 21 ¶¶7-9.) The Court declines to make any credibility determinations at this point; particularly because *Williams* addressed a situation akin to Plaintiff's—where an inmate discovers his grievance was never filed more than 45 days after the incident occurred. There, defendants contended that an inmate could simply "file a separate complaint grieving the denial of an extension of the time limit"; but the Court rejected that option as "wholly inapplicable as a mechanism to appeal an unfiled grievance." *Williams*, 829 F.3d at 125. Plaintiff's case demonstrates why: in February of 2016, after learning his October Grievance was never filed, Plaintiff attempted to remedy the deficiency by withdrawing his 1983 action and filing the April Grievance, which was repeatedly rejected as untimely. (*See* Turkle Decl., Exs. 12-18.) While not in keeping with the regulations, this conduct can only be described as an attempt to either appeal the nonresponse of the October Grievance or seek additional time to file a Grievance, both of which were flatly rejected. The procedures on the books provide no mechanism whereby an inmate can learn whether or not his grievance has been filed, and if not, how to proceed to properly grieving his concerns thereafter.

It bears noting that had Plaintiff asked, he would not have been granted an extension of time to file his grievance in February, as the regulations prohibit extensions at such a later hour. *See* 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a); *see also Williams*, 829 F.3d at 125 (noting that "the regulations state unequivocally that '[a]n exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence'"). It is therefore apparent that

administrative remedies were unavailable to Plaintiff. Plaintiff's failure to exhaust must be excused and Defendants' Motion denied.[12]

DOCCS has been on notice since July of 2016 that there is a defect in their procedures which are prohibitively opaque insofar as they prescribe for appeals of grievances that were unanswered or never filed. *See generally Williams*, 829 F.3d 118. Indeed, the Second Circuit explicitly recommended "that DOCCS revise its grievance procedures to instruct inmates how to appeal grievances that were not properly filed by prison staff, and how to appeal a grievance, to which the inmate never received a response, after being transferred." *Id.* at 126-27. DOCCS has yet to do so. Until such time as DOCCS revises its procedures, courts will continue to be faced with the prospect of making credibility determinations on whether or not the inmate actually filed his grievance and inmates will needlessly be trapped into positions in which they cannot properly adhere to the mandates of the PLRA, despite their best efforts.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is DENIED. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 37. The parties are directed to confer and submit the attached Civil Case Management Plan to Chambers on or before August 17, 2018. The Clerk of the Court is further directed to mail a copy of this Opinion and Order to Plaintiff at his address as listed on ECF.

Dated: July 30, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMAN
United States District Judge

---

[12] In light of this Court's determination that Plaintiff's failure to exhaust the October Grievance must be excused because an appeal to CORC was unavailable to him, this Court need not consider whether the Plaintiff's April Grievance was sufficient for exhaustion purposes.

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. May 2014

------------------------------------------------------------x

                                 Plaintiff(s),

- against -

                                 Defendant(s).

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

_____ CV _____ (NSR)

------------------------------------------------------------x

      This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge