UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
RAYMOND JACKSON,                                              :
                                                             :
                                        Plaintiff,           :
                    - against -                              :          16-CV-0267 (NSR)
                                                             :
DOWNSTATE CORRECTIONAL FACILITY,                             :
S. REYES (C.O.), C.O. THOBAN,                                :
                                                             :
                                        Defendants.          :
------------------------------------------------------------------- X


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**


                                          LETITIA JAMES
                                          Attorney General State of New York
                                          Attorney for Defendants
                                          28 Liberty Street, 18th Floor
                                          New York, New York 10005
                                          (212) 416-8524



Bruce J. Turkle
Assistant Attorney General
      Of Counsel

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT .................................................................................................................... 2

POINT I        PLAINTIFF FAILS TO SUBMIT EVIDENCE CORROBORATING
               HIS VERSION OF THE INCIDENT ............................................................ 2

POINT II       THE AMOUNT OF FORCE PLAINTIFF CONTENDS WAS EMPLOYED
               BY DEFENDANTS WAS REASONABLE AND WOULD NOT HAVE
               IMPLICATED THE EIGHTH AMENDMENT .............................................. 3

   A. Plaintiff Verbally Abused Defendants While His Property Was Being Searched .............. 3
   B. Plaintiff Disobeyed A Direct Order ..................................................................... 4
   C. The Alleged Incident Lasted A Matter Of Seconds .............................................. 5
   D. Plaintiff's Baseless Musings Do Not Create A Fact Issue ..................................... 6

POINT III      EVEN ASSUMING, ARGUENDO, THAT PULLING AN
               UNCOOPERATIVE INMATE'S ARM BEHIND HIS BACK FURTHER
               THAN WAS NECESSARY IMPLICATES THE CONSTITUTION, THE
               MEDICAL EVIDENCE ESTABLISHES THIS DID NOT OCCUR ................... 6

POINT IV       DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ...................... 8

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

Allen v. Cuomo,
   100 F.3d 253 (2d Cir. 1996)................................................................................2

Baker v. Outfitters, Inc.,
   254 F. Supp. 2d 346 (S.D.N.Y. 2003)................................................................7

Beauvoir v. Falco,
   345 F. Supp. 3d 350 (S.D.N.Y. 2018)................................................................8

Bermudez v. Waugh,
   No. 11 Civ. 947, 2013 WL 654401 (N.D.N.Y. Feb. 21, 2013) ........................3

Brandever v. Port Imperial Ferry Corp.,
   No. 13 Civ. 2813, 2014 WL 1053774 (S.D.N.Y. Mar. 13, 2014) ...................2

Cicio v. Kourofsky,
   No. 08 Civ. 0491, 2010 WL 5138549 (N.D.N.Y. Feb. 18, 2010) ................ 4-5

Girbes-Pierce v. City of New York,
   2019 WL 1522631(S.D.N.Y. Apr. 9, 2019).......................................................9

Gonzalez v. City of Schenectady,
   728 F.3d 149 (2d Cir. 2013)...............................................................................9

Gottlieb v. Cty. of Orange,
   84 F.3d 511 (2d Cir. 1996)................................................................................2

Hudson v. McMillian,
   503 U.S. 1 (1992)........................................................................................... 5-6

Jackson v. Tellado,
   236 F. Supp.3d 636 (E.D.N.Y. 2017) .............................................................10

Jeffreys v. City of New York,
   426 F.3d 549 (2d Cir.2005)...............................................................................2

Kalwasinski v. Artuz,
   No. 02 Civ. 2582, 2003 WL 22973420 (S.D.N.Y. Dec. 18, 2003)....................4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986)...........................................................................................6

Olutosin v. Lee,
   No. 14 Civ.00685, 2018 WL 4954107 (S.D.N.Y. October 11, 2018) ...............8

Pearson v. Callahan,
    555 U.S. 223 (2009)...............................................................................................8

Perry v. Stephens,
    659 F.Supp.2d 577 (S.D.N.Y. 2009)...................................................................5

Phelan v. Sullivan,
    541 Fed. Appx. 21 (2d Cir. 2013)........................................................................3

Scott v. Harris,
    550 U.S. 372 (2007)...............................................................................................2

Torres v. Selsky,
    No. 02 Civ. 0527, 2005 WL 948816 (N.D.N.Y. Apr. 25, 2005) ......................4

Tracy v. Freshwater,
    623 F.3d (2d Cir. 2010)........................................................................................9

Wilkins v. Gaddy,
    559 U.S. 34 (2010)................................................................................................6

Wright v. Goord,
    554 F.3d 255 (2d Cir. 2009).............................................................................2, 5

**CONSTITUTIONS**

Eighth Amendment .....................................................................................................3, 7

**RULES**

Federal Rule of Civil Procedure 56 ...........................................................................1, 4

Federal Rule of Civil Procedure 56.1 .........................................................................2-4

**PRELIMINARY STATEMENT**

Defendants, Correction Officer Sergio Reyes ("CO Reyes") and Correction Officer Shawn Thoben ("CO Thoben") (collectively, "Defendants"), respectfully submit this reply memorandum of law in further support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Plaintiff admits that on October 8, 2015, while Defendant correction officers were inspecting Plaintiff's belongings, he verbally abused Defendants in front of 20 other inmates, and then, after being promptly removed to a less populated area outside the inspection room, refused an order to place his nose against the wall. The only force Plaintiff contends was used was to hold his arm back until the supervising sergeant arrived, a "fast" and "quick" incident, lasting around 35 seconds. No jury could find that simply holding the arm of an uncooperative inmate for 35 seconds, then releasing him when assistance arrived, constituted a malicious and sadistic application of unnecessary force.

Further, Plaintiff offers nothing to rebut the medical evidence showing that Defendants did not pull Plaintiff's arm behind his head in the manner alleged. As Plaintiff's treating surgeon and Defendants' orthopedic expert explain, if Plaintiff's arm had been pulled behind his back in the manner he contends, it would have necessarily caused injuries to his shoulder and tissue. There were no such injuries, and Plaintiff's cubital tunnel syndrome could not have been caused by this event.

At a minimum, Defendants are entitled to qualified immunity because, among other reasons, Defendants did not violate a clearly established federally protected right, and prison officials in Defendants' position would not have understood that pulling an uncooperative inmate's arm behind his back in the manner Plaintiff describes violated the inmate's constitutional rights.

1

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO SUBMIT EVIDENCE CORROBORATING HIS VERSION OF THE INCIDENT

Plaintiff cannot "defeat the motion [for summary judgment] by relying on the allegations in [his] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." Gottlieb v. Cty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Here, Plaintiff's opposition offers no evidence sufficient to defeat summary judgment. See Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir.2005). His opposing declaration is an almost mirror image of his complaint, as is his Rule 56.1 Statement, which fails to respond, and thereby admits the specific statements contained in Defendants' Rule. 56.1 Statement. See Brandever v. Port Imperial Ferry Corp., No. 13 Civ. 2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014). Plaintiff's memorandum of law is a rambling, repetitive restatement of his claim, unsupported by relevant evidence or applicable case law.  Plaintiff's inclusion of the affidavit of Billy Andre, a non-party inmate, is meaningless, since he lacks actual knowledge of the incident. Plaintiff's opposition thus does not come close to making the evidentiary showing required to defeat summary judgment. See Wright, 554 F.3d at 266; Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996).

## POINT II

## THE AMOUNT OF FORCE PLAINTIFF CONTENDS WAS EMPLOYED BY DEFENDANTS WAS REASONABLE AND WOULD NOT HAVE IMPLICATED THE EIGHTH AMENDMENT

The record evidence, especially Plaintiff's own admissions, belie Plaintiff's account of the incident and the notion that Defendants intentionally or gratuitously inflicted pain, or used force that was disproportionate to the threat posed.   Even accepting Plaintiff's contention that Defendants held the arm of an uncooperative inmate behind his back until the supervising sergeant arrived, he alleges nothing more than a use of force that is common in prison, and appropriate in the context of Plaintiff's admitted refusal to follow orders. See, e.g., Phelan v. Sullivan, 541 Fed. Appx. 21, 24 (2d Cir. 2013); Bermudez v. Waugh, No. 11 Civ. 947, 2013 WL 654401, at *5 (N.D.N.Y. Feb. 21, 2013) (citing cases).

### (A) Plaintiff Verbally Abused Defendants While His Property Was Being Searched

The Opposition only confirms that on October 8, 2015, Plaintiff verbally confronted Defendants, taking exception to the manner in which Defendants were searching his belongings prior to his transfer to another facility. Plaintiff, who "has been hospitalized for mental health issues in the past," and who was "trigger[ed]" by Defendant CO Reyes' "tone," created a potentially combustible situation in Visiting Room 2, telling Defendant Reyes, within earshot of 20 other inmates, that he would "grieve [his] ass" if Plaintiff's legal work was mishandled. See Plaintiff's Memorandum of Law in Opposition ("Pl. Br."), pp. 9-10, and his September 29, 2019 Declaration ("Pl. Decl."), ¶4; Plaintiff's Rule 56.1 Statement, ¶7).   Although Plaintiff apparently denies telling Defendants, "[d]on't f**k with my legal work" (Pl. Br., p. 1), his deposition testimony proves otherwise. (See Ex. 1 to Pl. Decl., 159:9-17; see also Ex. 1 to Declaration of Bruce Turkle, dated August 7, 2019 ("Turkle Decl."), 159:15-17; 160:9-161:4; 193:15-195:6).   In

any event, the exact words Plaintiff used are not material; it is undisputed he was being uncooperative. He also admits "call[ing] out" [Defendant Reyes] for saying he was a born again christian," and of being "found guilty of all counts" for which he was charged arising from the incident, including creating a disturbance. Pl. Br., pp. 9-10.

### (B) Plaintiff Disobeyed A Direct Order

The Opposition also makes clear that the force allegedly used was directly proportional to quickly and safely achieve Defendants' intended goal of restraining Plaintiff until the supervising sergeant arrived. Plaintiff admits that after he was removed from Visiting Room 2, he was given a direct order to "put his nose on the wall." (Pl. Br., pp. 3, 8; Pl. Rule 56. 1 Statement, ¶9). Plaintiff admits disobeying the order, telling Defendants, "I'm not doing that." Pl. Br., pp. 8, 10, 13; Pl. Rule 56.1 Statement, ¶¶10-12). Plaintiff's alleged belief that the order was given to "humiliate and embarrass" and "degrade" him (see Pl. Br., pp. 3, 10, 12; Pl. Rule 56.1 Statement, ¶11), does not justify his refusal to obey it. See Kalwasinski v. Artuz, No. 02 Civ. 2582, 2003 WL 22973420 at *4, (S.D.N.Y. Dec. 18, 2003); Torres v. Selsky, No. 02 Civ. 0527, 2005 WL 948816, at * 8 (N.D.N.Y. Apr. 25, 2005); accord Cicio v. Kourofsky, No. 08 Civ. 0491, 2010 WL 5138549, *4, (N.D.N.Y. Feb. 18, 2010) ("inmates do not have a constitutional right to disobey the direct order of any corrections officer, even when they correctly believe that the order is unauthorized").

Plaintiff argues that Defendants acted maliciously in holding his arm behind his back because he had allegedly "plac[ed] his hands on the wall, giving himself up, not being a threat." (Pl. Br., pp. 2, 22). In Plaintiff's view, "[h]ad he not put his hands on the wall, as directed, then the defendants would have a legit argument" that the force allegedly used was reasonable, but his refusal to obey the order to place his nose against the wall did not warrant the alleged use of force. Pl. Br., p. 23. Putting aside the fact that the orders to place to his hands and nose against the wall

4

were part of the same exchange, Plaintiff cannot unilaterally decide which orders he will obey. (See Ex. 1 to Turkle Decl., 158:19-159:5; 159:9-14; 159:15-17; 160: 9-17; 163:14-19; 194:7-195:6; Ex. 2 to Turkle Decl); see also Cicio, 2010 WL 5138549, at *4 ("defendants' use of force was not wanton or unprovoked, but was caused by Cicio's refusal to obey a direct order;" court rejecting inmate's "claims that no force was necessary because he was already secured in his cell and could not cause harm to himself or others").

Plaintiff admits having the burden of showing "that the defendant acted with 'wantonness in light of the particular circumstances surrounding the alleged conduct." Pl. Br., p. 12 (quoting Wright, 554 F.3d at 268). Here, the "particular circumstances" are that Plaintiff shouted obscenities at correction officers in a room full of 20 inmates, then refused a direct order to place his nose against the wall. (See Ex. 1 to Turkle Decl., 159:15-17; 160:9-161:4; 193:15-195:6). No reasonable factfinder could conclude that Defendants acted with malice or wantonness. See, e.g., Hudson v. McMillian, 503 U.S. 1, 7-8 (1992); see also, Perry v. Stephens, 659 F.Supp.2d 577 (S.D.N.Y. 2009) ("Plaintiff offers no evidence that Defendant sought to wantonly inflict pain in response to Plaintiff's refusal to obey a direct order ....")(citation omitted); Defs. Opening Br., Point I, pp. 9-10.

### (C) The Alleged Incident Lasted A Matter Of Seconds

Plaintiff testified that Defendants allegedly restrained him for between 30 and 40 seconds, an incident he characterized as "fast and quick." (See Ex. 1 to Turkle Decl., 181:15-185:3; 205:14-19). Plaintiff now claims that he "was simply stating … [that t]he lifting the arm, lasting for about 30 seconds or more. But the defendants held the plaintiff's right arm twisting it, until SGT. Nunez arrived, approximately 2 minutes." Pl. Br., p. 4. Under either scenario, the incident was brief; it ended upon the arrival of the supervising sergeant; and the alleged force was de minimus, not

unreasonably employed, and does not support a claim that Defendants acted wantonly. See Hudson

v. McMillian, 503 U.S. at 7-8.; Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).

### (D) Plaintiff's Baseless Musings Do Not Create A Fact Issue

Plaintiff "must do more than simply show that there is some metaphysical doubt as to the

material facts…" to defeat summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586-87 (1986).  Thus, the fact that Defendants were able to control the situation in

Visiting Room 2 without the aid of "other C.O.'s that were also present …," is not proof that

Plaintiff was not creating a disturbance. Pl Br., p. 1.  The fact that "there were an additional four

C.O. [in the area outside Visiting Room 2] if needed for back-up," does not mean "it was

unnecessary to have the plaintiff put his nose on the wall." (Id., p. 21).  Indeed, those other four

correction officers were involved in dealing with, and keeping control of the approximately 20

other inmates then present. The possibility that Plaintiff's actions would incite those other inmates

is a prime reason why Defendants acted to control the situation quickly. And the fact that

Defendants did not submit a declaration from a now retired, non-party, Sgt. Stevens, is not proof

of a "cover-up;" Plaintiff admits that Sgt. Stevens was not involved in the October 8, 2015 incident;

his principal source of information is what Plaintiff allegedly told him the following day; and he

has no present recollection of any relevant event. (See Pl. Br., pp. 5-6; Pl. Decl., ¶17 and Ex. 1

thereto).

## POINT III

### EVEN ASSUMING, ARGUENDO, THAT PULLING AN UNCOOPERATIVE INMATE'S ARM BEHIND HIS BACK FURTHER THAN WAS NECESSARY IMPLICATES THE CONSTITUTION, THE MEDICAL EVIDENCE ESTABLISHES THIS DID NOT OCCUR

Even if, as Plaintiff contends, "a significant injury can occur and cause harm within 30

seconds or less, it does not matter if the incident was 'fast and quick,'" (Pl. Br., p. 9), he admits

6

that, "the defendants' doctors both have claim that the plaintiff's injury is elbow condition, cubital

tunnel syndrome, could not have resulted from the alleged October 8, 2015, incident." Pl. Br., p.

15 (citing Declaration of Dr. Richard Weinstein (Dr. Weinstein Decl."), ¶7, and Declaration of Dr.

Dragos Maceleru (Dr. Maceleru Decl."), ¶4). See Defs. Opening Br., Point II, pp. 12-14.[1] Plaintiff

further admits that the doctors concluded that, "the way the plaintiff describes the arm lifted behind

his back, it would have damaged the shoulder, ligaments, torn tissue and/or fractured bone. " (Pl.

Br., p. 9, citing Weinstein Decl., ¶4 and Ex. 1 thereto, Maceleru Decl., ¶3.   Plaintiff told Dr.

Weinstein that he had not sustained pain or injury in the shoulder, wrist or hand, and has never

alleged otherwise. (See Ex. 1 to Dr. Weinstein Decl., at p 2, "Independent Medical Examination");

see also,  Ex. 1 to Turkle Decl., 3:17-19; 14:6-24; 126:17-21; 199:11-14; Ex. 3 thereto).  Thus,

even were it assumed that pulling an uncooperative inmate's arm behind his back further than

necessary could implicate the Eighth Amendment, the medical evidence establishes that this could

not have occurred. See Defs. Opening Br., Point I, pp. 9-10.

Plaintiff mistakenly contends that "both Dr. Weinstein and Dr. Maceleru, have concluded

that the plaintiff suffers from mild cubital tunnel syndrome, cause[d] by sleeping on the arm,

repetitively flexing, and extending the arm, or just by simply using a phone," but denies that he

engaged in such activities. (Pl. Br., p. 16 citing Weinstein Decl., ¶ 7and Maceleru Decl. ¶ 4). Dr.

Weinstein and Dr. Maceleru did not express a conclusion as to how Plaintiff developed mild cubital

tunnel syndrome, they merely identified some possible causes of the condition. (See Weinstein

Decl., ¶ 7and Maceleru Decl. ¶ 4). The conclusion they reached was that Plaintiff's contention that

---

[1] Plaintiff quotes Baker v. Outfitters, Inc., 254 F. Supp. 2d 346, 352-53 (S.D.N.Y. 2003) for the general proposition
that "expert discovery should be excluded altogether if it is 'speculative' or 'conjectural' or if it is based on
assumptions 'so unrealistic and contradictory as suggest bad faith." (Pl. Br., p. 19). He also cites Daubert v. Merrell
Dow Pharm., 509 U.S. 589, 593 (1993). (Id., p. 15). However, Plaintiff fails to offer any evidence questioning the
experience and expertise of Dr. Weinstein and Dr. Maceleru, or permitting an inference that their respective
conclusions were speculative.

his arm was pulled behind his back until his hand touched his shoulder blade is contrary to the objective medical evidence, and Plaintiff offers nothing to refute their respective conclusions. (See Dr. Weinstein Decl., ¶7; and Ex. 1 thereto, at p. 6 ("I can say with high medical certainty that the reported twisting injury to the arm did not cause the cubital tunnel syndrome"); Dr. Macelaru Decl., ¶4; see also Beauvoir v. Falco, 345 F. Supp. 3d 350, 363 (S.D.N.Y. 2018) ("expert … testified … that "plaintiff's corneal disease was not proximately caused by plaintiff's exposure to pepper spray") (citing Olutosin v. Lee, No. 14 Civ.00685, 2018 WL 4954107, at *6 (S.D.N.Y. October 11, 2018). See Defs. Opening Br., Point II, pp.12-14.

## POINT IV

## DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

There is no evidence indicating that Defendants violated Plaintiff's constitutional rights. See Pearson v. Callahan, 555 U.S. 223, 236-43 (2009). Plaintiff's own admissions demonstrate that any force allegedly used by Defendants was used in good faith to restore order, and without malice. (See Ex. 1 to Turkle Decl., 171:5-11;  172:22-173:9; 175:18-25; 181:15-183:16; 184: 15-185:3; 195:7-23; 205:14-19). See Defs. Opening Br., Point III, pp. 14-17

Here, there is no evidence indicating that Defendants violated clearly established law. See Defs. Opening Br., Point III, pp. 14-17. There is considerable case law holding that reasonable force may be used in response to an inmate's failure to obey a direct order, and the pulling of the arm behind the back of an uncooperative inmate does not constitute unreasonable force, which case law Plaintiff ignores. See Id., Point I, pp. 10-11.

Further, it was not unreasonable for correction officers in Defendants' position to believe that they were using reasonable force when they allegedly pulled Plaintiff's arm behind his back

8

for less than a minute, restraining him until assistance arrived, in response to Plaintiff's refusal to obey a direct order.

As noted in Point II (B), supra, Plaintiff contends that Defendants should be denied qualified immunity "because "[t]he plaintiff was not refusing a direct order when the plaintiff put his hands on the wall, giving himself up." Pl. Br., p. 22.  However, he admits that "defendants wanted the plaintiff's nose, and his hands touching the wall simultaneously at the same time, and when the plaintiff refuse [t]he defendants grab … [plaintiff's] right arm." Id.  Thus, he not only makes clear that the two orders were inseparably intertwined, but also that he refused to obey a direct order, underscoring the reasonableness of the alleged force.

Finally, the cases on which Plaintiff relies largely support Defendants' position.  In Tracy v. Freshwater, 623 F.3d, 90, 98 (2d Cir. 2010) (cited at Pl. Br., p. 21), the Second Circuit granted defendant police officers qualified immunity in an excessive force case, stressing that it was "required to make allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (internal citations and quotation omitted). In Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (cited at Pl. Br., p. 20), a false arrest claim, the Second Circuit affirmed the trial court's dismissal of the action on the basis of qualified immunity.

In Girbes-Pierce v. City of New York, 2019 WL 1522631(S.D.N.Y. Apr. 9, 2019) (cited at Pl. Br., p. 20), the court considered the question of qualified immunity after the jury had already determined that excessive force had been used by defendants police officers.  Moreover, defendants there used pepper spray on plaintiff after he had "already been physically restrained—

9

after he was forced to the ground, after [defendants]... had a hold on him with their weight, hands, and knees, and when he was not trying to get off the ground). No comparable facts exist here.

Likewise, in Jackson v. Tellado, 236 F. Supp.3d 636 (E.D.N.Y. 2017)(cited at Pl. Br., p. 21), unlike here, the court took "as its starting point the jury's findings that [certain police officers had] personally subjected Plaintiff to objectively unreasonable force under the circumstances, [and that certain other] Defendants failed to intervene to prevent Plaintiff from being subjected to excessive force." 236 F. Supp.3d at 663.

Accordingly, if the Court finds that Defendants violated Plaintiff's constitutional rights, they are entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that their motion for summary judgment be granted and the case be dismissed.

Dated: New York, New York
       November 22, 2019

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants

By:
_____/s/_____
BRUCE J. TURKLE
Assistant Attorney General
28 Liberty Street, 18th Floor
New York, New York 10005
(212) 416-8524
Bruce.Turkle@ag.ny.gov

10

## DECLARATION OF SERVICE

BRUCE J. TURKLE, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

That on November 22, 2019, I caused a copy of Defendants' Reply Memorandum of Law in further support of motion for summary judgment, with copies of unreported cases cited therein, to be served on:

Raymond L. Jackson, 15-A-3740
Sing Sing Facility
354 Hunter Street
Ossining, New York 10562

by having it mailed via the United States Postal Service to the above address in a sealed, properly addressed envelope, with postage prepaid.

_____/s/_____
BRUCE J. TURKLE
Assistant Attorney General

Executed on November 22, 2019